ORIGINAL FILED

06 JAN 31 PH 1:41

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  HOWARD A. SLAVITT (State Bar No. 172840)
   COBLENTZ, PATCH, DUFFY & BASS LLP
2  One Ferry Building, Suite 200
   San Francisco, California  94111-4213
3  Telephone:  415.391.4800
   Facsimile:  415.989.1663
4  Email:    ef-has@cpdb.com,
             ef-cpm@cpdb.com

**E-filing**

5
6  Attorneys for Plaintiff
   RuSPORT, INC.

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN FRANCISCO DIVISION**

**CV 08        0734**

MMC

11  RuSPORT, INC., a California Corporation,    Case No.

12              Plaintiff,                      **COMPLAINT FOR INJUNCTIVE
                                                RELIEF – BREACH OF CONTRACT
13      vs.                                     AND INTERFERENCE WITH
                                                CONTRACT**
14  JUSTIN WILSON PLC, a company registered
15  in England; and JUSTIN WILSON, an
    individual,
16
                Defendants.
17

18              **THE PARTIES, VENUE, AND JURISDICTION**

19      1.      Plaintiff RuSport, Inc. ("RuSport" or "plaintiff") is a California corporation.

20  RuSport owns, races, and tests race cars competing in the Champ Car World Series ("Champ

21  Car").  Its owner, Dan Pettit ("Pettit") resides in Atherton, California.

22      2.      Pettit makes most major strategic, employment, and financial decisions for the

23  business from his home office in Atherton, California, and made at least a substantial portion of

24  the business decisions and communications specifically relating to this dispute from Atherton,

25  California.  Defendants Justin Wilson Plc ("JW plc") and Justin Wilson ("Wilson") have at all

26  relevant times known that Pettit resides in Atherton, California, and that he conducts substantial

27  business relating to RuSport from there.  RuSport also currently maintains a place of business in

28

COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200, San Francisco, California  94111-4213
415.391.4800 • Fax 415.989.1663

13293.001.790381v1                                    1

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 • FAX 415.989.1663

1   Indiana where its race cars are engineered, repaired and outfitted for Champ Car races.

2        3.     Defendant JW plc is a private limited company registered in England, United

3   Kingdom.  JW plc is the sole and exclusive agent and manager of defendant Justin Wilson, a race

4   car driver.

5        4.     Defendant Wilson is a citizen and resident of England, United Kingdom.  Wilson is

6   the only race car driver managed by JW plc.

7        5.     Since 2004, Wilson has been driving race cars in the Champ Car races.  Champ Car

8   is an international open-wheel car racing championship series, with half of the races occurring in

9   foreign countries.  Of the approximately 17 Champ Car races, test races and spring training events

10  that occur each year, three take place in California – in Long Beach, Monterey, and/or San Jose.

11  California is the only state in the United States that hosts three Champ Car events each year:  two

12  races and a Champ Car spring training event.

13       6.     Wilson has special, unique, unusual or extraordinary skill or talent as a race car

14  driver.  For example, on his website, http://www.justinwilson.co.uk, Wilson describes himself as

15  "one of British motor sport's hottest properties. [I]n 2004 he quickly established himself as one of

16  the fastest drivers in the Champ Car World Series . . . .  After a successful debut season he was

17  snapped up by RuSport and led the young team to their first win on his way to 3rd in the 2005

18  championship.  In 2006 Justin went one better, taking seven podiums, including a win in

19  Edmonton, finishing 2nd in the driver championship."

20       7.     After the 2006 Champ Car season, plaintiff RuSport entered into a Racing Services

21  Agreement (the "Agreement") with JW plc and Wilson, a copy of which is attached hereto as

22  Exhibit A and incorporated fully herein.  The Agreement provides for Wilson to render personal

23  services of a special, unique, unusual, or extraordinary character to RuSport:  the parties agreed

24  that Wilson would drive RuSport's race car in Champ Car races.  Wilson is a sought after athlete

25  with special talents for driving cars fast and/or winning, or placing high in car races, and he

26  appeals to fans and advertisers.  Wilson was extremely successful in the 2007 Champ Car season

27  while driving for RuSport.

28       8.     This Court has subject matter jurisdiction over this action under 28 U.S.C.

COMPLAINT FOR INJUNCTIVE RELIEF – BREACH OF CONTRACT AND INTERFERENCE WITH CONTRACT

1    § 1332(a), in that there is diversity of citizenship between the parties and the amount in

2    controversy exceeds $75,000, exclusive of interest and costs.

3         9.     This Court may exercise personal jurisdiction over defendants because, *inter alia*,

4    (i) of paragraph 14 of Exhibit A; (ii) defendants purposefully are availing themselves of the

5    privilege of doing business in California, specifically in connection with the occurrences and

6    transactions relating to this dispute; and (iii) in negotiating the Agreement, in performing it, and in

7    breaching it, defendants directed and engaged in numerous communications and negotiations to

8    and with Pettit while he was in California.

9         10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

10         11.    Assignment to the San Francisco Division of this Court is proper under Local

11    Rule 3-2(d) because a substantial part of the events or omissions giving rise to plaintiff's claims

12    occurred in San Mateo County.

13    **FIRST CAUSE OF ACTION**
**(For Breach of Personal Services Contract – Provisional and Permanent Injunctive Relief;**
14    **against defendants JW plc and Wilson)**

15         12.    Plaintiff realleges and incorporates by reference each and every prior allegation of

16    this Complaint as though fully set forth herein.

17         13.    Plaintiff and defendants entered into the Agreement for the purpose of having

18    Wilson provide personal services to plaintiff as a race car driver. Jonathan Palmer ("Palmer"), the

19    managing director for JW plc, agreed to and signed the Agreement on behalf of JW plc. In

20    addition, Wilson individually read, agreed to the terms of, and signed the Agreement.

21         14.    Plaintiff has performed all conditions, covenants and promises it was required to

22    perform in accordance with the terms and conditions of the Agreement, except those obligations, if

23    any, that it was prevented or excused from performing.

24         15.    Defendants have breached the Agreement and have threatened to continue to

25    breach it by negotiating with Newman/Haas/Lanigan Racing, LLC ("NHL Racing") to drive its car

26    during the 2008 Champ Car season; by signing an agreement to drive NHL Racing's car during the

27    2008 season; and by threatening to begin racing for NHL Racing as soon as January 31-

28    February 2, 2008.

13293.001.790381v1

3

COMPLAINT FOR INJUNCTIVE RELIEF – BREACH OF CONTRACT AND INTERFERENCE WITH CONTRACT

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 • FAX 415.989.1663

16.    On or before August 2007, defendants had begun negotiating with NHL for Wilson to drive a car for the NHL Racing team in the Champ Car races, and to ditch the RuSport team. Such negotiations continued through January 2008. On or about January 28, 2008, Palmer informed Pettit that "Justin Wilson plc has signed a contract with Newman Haas Lanigan (NHL) for 2008, which means of course that Justin Wilson will be driving for NHL this season." Defendants then announced JW plc's contract with NHL Racing to the racing car press on January 29, 2008. As a result, Wilson will not be driving for RuSport in the 2008 Champ Car Season, or beyond. Such conduct breaches the Agreement, including paragraphs 1(C) and 11 thereof.

17.    Unless and until enjoined and restrained by order of this Court, defendants' breaches and threatened conduct of driving for NHL Racing for the 2008 Champ Car Season (and likely beyond), will cause great and irreparable injury to plaintiff.

18.    The services that JW plc and Wilson promised to provide to plaintiff are of a special, unique, unusual, or extraordinary character, which gives it peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law.

19.    Plaintiff is entitled to injunctive relief against JW plc, Wilson and all other representatives, agents, employees, aiders, abettors, and persons acting in concert with JW plc.

## SECOND CAUSE OF ACTION
**(For Interference With Contract -- Provisional and Permanent Injunctive Relief; against defendant Wilson)**

20.    Plaintiff realleges and incorporates by reference each and every prior allegation of this Complaint as though fully set forth herein.

21.    Plaintiff alleges that Wilson, individually, is bound by, and agreed to the terms of the Agreement; however, in event that the Court determines that he is not, plaintiff alleges this second cause of action in the alternative against Wilson, for interference with contract.

22.    The Agreement is a valid contract. At all relevant times, Wilson knew of the contract, and, indeed, read it, agreed to it, and signed it.

23.    Wilson has interfered with the performance of and disrupted the Agreement, and has threatened to continue to cause breaches of it by negotiating with NHL Racing to drive its car during the 2008 Champ Car season, and because he will imminently (as soon as January 31, 2008-

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA  94111-4213
415.391.4800  •  FAX 415.989.1663

COMPLAINT FOR INJUNCTIVE RELIEF – BREACH OF CONTRACT AND INTERFERENCE WITH CONTRACT

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 • FAX 415.989.1663

1   February 2, 2008) be driving for NHL Racing at a Champ Car event.

2       24.    As a result of Wilson's conduct, the Agreement plaintiff's has been breached and its

3   performance disrupted.

4       25.    Unless and until enjoined and restrained by order of this Court, Wilson's

5   negotiations with NHL Racing to drive its car during the 2008 Champ Car season and his

6   threatened and imminent conduct of actually driving for NHL Racing for the 2008 Champ Car

7   Season (and likely beyond), will cause great and irreparable injury to plaintiff.

8       26.    The services that Wilson promised to provide to plaintiff are of a special, unique,

9   unusual, or extraordinary character, which gives it peculiar value, the loss of which cannot be

10   reasonably or adequately compensated in damages in an action at law.  Plaintiff has no adequate

11   remedy at law for the injuries caused.

12       27.    Plaintiff is entitled to injunctive relief against Wilson.  (*See, e.g.* Exh. A hereto,

13   paragraphs 1(C), 11; California Civil Code Section 3423; California Code of Civil Procedure

14   Section 526(b).)

## PRAYER FOR RELIEF

16       WHEREFORE, plaintiff prays for relief as follows:

17       1.    For a temporary restraining order, preliminary injunction, and permanent

18   injunction providing that:

19       (a)    For the duration of the 2008 and 2009 Champ Car seasons, defendant

20   Wilson is prohibited from driving for any domestic or international race team other than RuSport,

21   including but not limited to that he is prohibited from driving for Newman Haas Lanigan, LLC,

22   during this period;

23       (b)    Until after the final race of the 2009 Champ Car Season, defendant JW plc,

24   defendant Wilson and all other representatives, agents, employees, aiders, abettors, and persons

25   acting in concert with JW plc are prohibited from entering into any agreement(s) relating to the

26   provision of race car driving services by Justin Wilson with any domestic or international race

27   team, related organizations, group or entity, race team owner, race team manager and/or with any

28   sponsor of RuSport; and

COMPLAINT FOR INJUNCTIVE RELIEF – BREACH OF CONTRACT AND INTERFERENCE WITH CONTRACT

1        (c)    Until August 16, 2009, defendant JW plc, defendant Wilson and all other

2    representatives, agents, employees, aiders, abettors, and persons acting in concert with JW plc are

3    prohibited from negotiating any agreement(s) relating to the provision of race car driving services

4    by Justin Wilson with any domestic or international race team, related organizations, group or

5    entity, race team owner, race team manager and/or with any sponsor of RuSport.

6        2.    Such other relief as justice may require and/or may otherwise in the Court's

7    judgment be appropriate to adjust the equities between the parties.

8    Dated: January 31, 2008          COBLENTZ, PATCH, DUFFY & BASS, LLP

9

10                 By:     *Howard A. Slavitt*

11                    HOWARD A. SLAVITT

                Attorneys for Plaintiff

12                    RuSPORT, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800  •  FAX 415.989.1663

COMPLAINT FOR INJUNCTIVE RELIEF – BREACH OF CONTRACT AND INTERFERENCE WITH
CONTRACT

# EXHIBIT A

Redacted in its entirety.  Document has been submitted under seal.

1  HOWARD A. SLAVITT (State Bar No. 172840)
   COBLENTZ, PATCH, DUFFY & BASS LLP
2  One Ferry Building, Suite 200
   San Francisco, California  94111-4213
3  Telephone:  415.391.4800
   Facsimile:  415.989.1663
4  Email:    ef-has@cpdb.com,
             ef-cpm@cpdb.com
5
   Attorneys for Plaintiff
6  RuSPORT, INC.

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10 RuSPORT, INC., a California Corporation,      Case No.

11                    Plaintiff,

12          vs.                                  **EXHIBIT A TO PLAINTIFF'S
                                                 COMPLAINT**
13 JUSTIN WILSON PLC, a company registered
   in England; and JUSTIN WILSON, an
14 individual,

15                    Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

**RuSPORT**          <u>RACING SERVICES AGREEMENT</u>          1/29/2007

This Agreement is entered into this 21st day of December, 2006, by and between RuSPORT, INC., a California corporation whose address is 6771 East 45th Street, Loveland, Colorado, 80538, (hereinafter referred to as "RuSPORT") and Justin Wilson Plc, a company registered in England whose registered office is at The Old Post Office, Worthing Road, Southwater, West Sussex, England RH13 9EZ, (hereinafter referred to as "JW plc") (both RuSPORT and JW plc hereinafter collectively known as the "Parties").

<u>RECITALS</u>

WHEREAS, RuSPORT is in the business of owning, racing and testing race cars currently competing in the Champ Car World Series (sometimes referred to as "Champ Car(s)") currently sanctioned by the Open Wheel Racing Series, Inc., Champ Car World Series, Inc. and currently known as the "Champ Car World Series Powered by Ford" or as such series may be known under any replacement name during the Term (hereinafter referred to as "Champ Car")

WHEREAS, JW plc is the sole and exclusive agent and manager of Justin Wilson, a racing driver who has attained a reputation as an excellent professional driver in many series including but not limited to Formula A Karts, Formula Vauxhall, Formula Palmer Audi, Formula 3000 and most recently in the Champ Car World Series.

WHERAS pursuant to a management agreement (the "Management Agreement") between JW plc and Justin Wilson dated 4 March 2003, JW plc has the exclusive right to progress and complete any negotiations relating to the participation of Justin Wilson in motorsport activities.

WHEREAS, RuSPORT desires to retain the services of JW plc for the purpose of JW plc procuring that, on an exclusive basis, Justin Wilson drives a race car entered by RuSPORT currently in Champ Car and subject to the conditions set forth below.

WHEREAS, JW plc has represented to RuSPORT that it has no obligation or contractual commitment that would interfere with its executing this Racing Services Agreement.

NOW, THEREFORE, in consideration of the mutual benefits and promises hereunder set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      <u>TERM</u>

        A.      With effect from January 1st, 2007 and subject to the provisions of this Agreement, RuSPORT hereby retains JW plc for the purpose of JW plc procuring that Justin Wilson provides to RuSPORT race car driving services until midnight on the day of the final race of the 2009 Champ Car Season (hereinafter referred to as the "Term").

        B.      RuSPORT shall have the option to extend the Term of this Agreement until December 31st, 2011. RuSPORT shall have the sole right to exercise said option by notifying JW plc in writing on or before August 15th, 2009, and any such extension to the Term shall be subject to RuSPORT and JW plc agreeing to terms of remuneration applicable to the 2010 or the 2010 and 2011 Champ Car Season(s) by August 15th 2009. If RuSPORT and JW plc can not reach an agreement on terms for said extension by August 15th, 2009, JW plc shall be entitled to negotiate with racing teams, team owners, team managers, or other racing entities, for the services of Justin Wilson and for the avoidance of doubt this Agreement shall terminate automatically in accordance with clause 1A. At no

**RUSPORT**                **RACING SERVICES AGREEMENT**                1/29/2007

time during the term of this agreement may either party make statements in public or to the press with regard to said negotiations without the prior written consent of the other party.

C.    With the exception of the terms outlined in clause 1(B), during the Term and the Option Term (which as used hereinafter shall include the 2007, 2008 and 2009 Champ Car World Series during the Term and the 2010 and 2011 Champ Car World Series during the Option Term, or any portion thereof if exercised and not terminated by RuSPORT) of this Agreement, JW plc or any representative of JW plc will not negotiate with nor enter into any agreement(s) relating to Justin Wilson for further race driving services with any domestic or international race team, related organizations, group or entity, race team owner, race team manager or representatives of any of the foregoing and/or with any sponsor of RuSPORT without the prior express written consent and approval of RuSPORT. RuSPORT may enforce this provision by injunction against JW plc or any representative of JW plc, in addition to any other legal and/or equitable remedy RuSPORT may have.

D.    The Parties agree that the Agreement may be terminated following the final race event of the 2007 season if Justin Wilson fails to qualify his car in a top three (3) position, on at least three (3) occasions during the period of the 2007 season.

2.    **DUTIES AND OBLIGATIONS**

A.    **JW plc**

In performing the services required of JW plc by this Agreement, JW plc shall use its best endeavors to procure that Justin Wilson (i) will devote sufficient time and energies to perform as a racing driver to the best of his ability; (ii) will take reasonable precautions to avoid risk of injury to himself or others, including using, at all times, appropriate protective clothing and safety equipment when engaging in racing activities and general recreational activities; (iii) will, in connection with racing, qualifying, practicing and testing, together with any sponsor related promotional activities, report at the times and places set forth by RuSPORT and the Championship Series in excellent physical and mental condition and will keep himself, throughout the Term and any such Option Term of this Agreement, in excellent physical and mental condition; (iv) will comply with all rules and reasonable requirements of RuSPORT, Champ Car or any other then currently entered Championship Series and sponsors of RuSPORT respecting his conduct or other rules of any racing association of which RuSPORT or Justin Wilson may be a member; and (v) will at the request of RuSPORT make his driving services available to RuSPORT for all testing during the Term.

B.    **RuSPORT**

In consideration of the obligations of JW plc under this Agreement, RuSPORT agrees, unless prevented by some cause beyond RuSPORT's reasonable control, to provide the following throughout the Term, in each case in good faith and to the high degree of care, skill and professionalism expected of a front-running Champ Car Series team: enter Justin Wilson and the Race Car in each race consisting of the Championship Series; provide a Race Car for Justin Wilson to drive in the race; provide Justin Wilson with a competitive race program which shall include, without limitation; (i) a competitive race car chassis; (ii) competitive engines; (iii) engineers, mechanics and other race team members devoted primarily to the race car driven by Justin Wilson (iv) adequate testing and practice; (v) sufficient engines for the race; (vi) chassis development. It is the intent of RuSPORT to expend its best efforts toward the goal of maximizing performance and winning races. Notwithstanding the foregoing, if Justin Wilson does not maintain the requisite competition license, has been banned from participating in the Championship Series by a competent motor racing authority, (provided that no act, error or default of RuSPORT in whole or in part contributed to such ban) or if Justin Wilson, in the

**RUSPORT**    <u>RACING SERVICES AGREEMENT</u>    1/29/2007

opinion of the qualified medical staff is deemed to suffer a Disability and is unfit to drive in at least three (3) successive Championship Series races by reason of sickness, injury or other incapacity, ("**Disability**" meaning the inability to substantially carry out racing duties under this Agreement due to physical or mental impairment on a permanent or long-term basis), RuSPORT shall be relieved of its obligations under the Agreement and in all interviews related the sole right to terminate the Agreement, on provision of 30 days prior notice in writing, to be served no later than 15 days after the relevant event giving rise to termination (provided that in the event of death or Disability suffered by Justin Wilson this Agreement shall terminate automatically), substitute another driver for a period to be determined solely by RuSPORT or suspend the Agreement. In the event said Agreement is suspended or terminated pursuant to this or any other provision in this Agreement, RuSPORT shall fully remunerate JW plc for any unpaid compensation, expense payments and performance incentives. In the event said Agreement is suspended pursuant to this or any other provision in this Agreement, RuSPORT shall be entitled to extend the Agreement for a like period beyond any Term then in effect.

C.    <u>**INTEGRITY and CULTURE**</u>

RuSPORT shall and JW plc shall use its best endeavors to procure that Justin Wilson shall, orally promote and support each other at all times during the effective Term of this Agreement, at all public functions and in all interviews related to racing activities or otherwise and give their best efforts and loyalty to each other, and conduct themselves at all times with appropriate recognition of the fact that the success of the entire team, in its pursuit to be the best race team organization in the United States, depends to substantial extent upon the loyalty, dedication, focus, desire and upon the public image projected by RuSPORT and Justin Wilson.

3.    <u>**PAYMENT PACKAGE**</u>

For all racing services performed by JW plc for RuSPORT during the Term of this Agreement, RuSPORT shall pay JW plc as follows (together the "**Fixed Fee(s)**"):

A.    <u>**Fixed Fee for 2007 Championship Season**</u>

RuSPORT shall pay to JW plc four hundred seventy five thousand dollars ($475,000.00 US) to be paid in equal monthly installments of thirty nine thousand five hundred eighty three dollars ($39,583.00 US) per month commencing upon January 1, 2007 forward until December 31, 2007.

B.    <u>**Fixed Fee for 2008 Championship Season**</u>

RuSPORT shall pay to JW plc six hundred thousand dollars ($600,000.00 US) to be paid in equal monthly installments of fifty thousand dollars ($50,000.00 US) per month commencing upon January 1, 2008 forward until December 31, 2008.

C.    <u>**Fixed Fee for 2009 Championship Season**</u>

RuSPORT shall pay to JW plc seven hundred fifty thousand dollars ($750,000.00 US) to be paid in equal monthly installments of sixty two thousand five hundred dollars ($62,500.00 US) per month commencing upon January 1, 2009 forward until December 31, 2009.

D.    <u>**Fixed Fee for 2010 Championship Season and Beyond**</u>

Fixed fees for the 2010 and the 2011 seasons (if applicable) shall be determined based on the criteria outlined in clause 1(B) of the Agreement.

**RŪSPORT**          <u>RACING SERVICES AGREEMENT</u>          1/29/2007

E.     <u>**Performance Incentives**</u>

RuSPORT shall pay to JW plc shall be paid the following sums in addition to the Fixed Fee as set forth herein above:

    a.     <u>**Per event**</u>:

Each 1st Place Finish – Fifty thousand dollars ($50,000)
Each 2nd Place Finish – Forty thousand dollars ($40,000)
Each 3rd Place Finish – Thirty thousand dollars ($30,000)
Each 4th Place Finish – Twenty thousand dollars ($20,000)
Each 5th Place Finish – Ten thousand dollars ($10,000)

    b.     <u>**Championship Series Season Points**</u>

1st Place Finish – Five hundred thousand dollars – ($500,000)
2nd Place Finish – Three hundred & Fifty thousand dollars – ($350,000)
3rd Place Finish – Two hundred & Twenty Five thousand dollars – ($225,000)

F.     <u>**Prize Money**</u>

The term "Prize Money" as used in this paragraph shall mean the prize and/or series money received by RuSPORT in respect of the race car driven by Justin Wilson. Any and all Prize Money receivable by RuSPORT and/or Justin Wilson for individual race events, year end or Championship Series points funds shall be retained by RuSPORT, for the purpose of distribution to RuSPORT drivers and team members.

F.     <u>**Other Prizes**</u>

JW plc shall receive and shall be entitled to retain all personal non-monetary tangible awards for individual Championship Series events and/or Championship Series year end awards. All qualifying, racing or Championship Series trophies received shall belong to RuSPORT. JW plc at its sole expense may have duplicate copies made.

G.     <u>**Timing of Payments**</u>

Timing for making all payments to JW plc is of the essence. All payments to JW plc for all performance incentive money shall be paid to JW plc within 45 days of the relevant event giving rise to the relevant payment. All monies due to JW plc shall be paid into the following bank account (or any substitute bank account notified to RuSPORT in writing by JW plc):

Account name:    Justin Wilson Plc
Account number:  55441122
Sort code:      20-42-58
Bank Name:     Barclays Bank Plc
Address:        Horsham Branch, 2 Carfax, Horsham, RH12 1DN.

H.     <u>**Travel and Meal Expenses**</u>

RuSPORT shall pay Justin Wilson all of his reasonable travel, food and lodging expenses in connection with the provision of his services as a driver under this Agreement.

**RUSPORT**                 RACING SERVICES AGREEMENT                 1/29/2007

RuSPORT shall not be responsible for any of Justin Wilson's incidentals and personal expenses such as long distance telephone calls.

> I.    **Other Benefits**

> RuSPORT shall provide or pay for, whichever the case, the following items: (i) all race team clothing, driver uniforms, gloves, shoes and associated race gear; (ii) three (3) Champ Car Series "hard cards", additional hard cards to be provided by RuSPORT at cost price at JW plc's expense; (iii) Driver's Championship Series registration and license fees, (iv) hospitality in the RuSPORT hospitality area at each North American Race Event for up to ten (10) guests of Justin Wilson and/or JW plc (to be arranged by RuSPORT and paid for by JW plc at cost price), and (v) up to three (3) overcrew passes per Race and grandstand tickets for guests of Justin Wilson and/or JW plc ( to be arranged by RuSPORT and paid for by JW plc at cost price).

4.    **RELATIONSHIP**

> Nothing herein contained shall be construed or have effect as constituting any relationship of employer and employee between RUSPORT and Justin Wilson or a partnership, joint venture or agency relationship between JW plc and RuSPORT. JW plc shall use its best endeavors to procure that Justin Wilson wears RuSPORT clothing during all interviews, if possible, and mentions RuSPORT and its sponsors as often as regularly possible in all interviews. JW plc shall use its best endeavors to procure that Justin Wilson will support in good faith and favorably represent RuSPORT and each of its sponsors and their products and that he will abide by all laws and regulations and all applicable racing industry and Championship Series event rules, regulations and requirements related to participation in race events. RuSPORT will not be responsible for any fines assessed by the competent legal or regulatory body against Justin Wilson that are levied solely and directly as a consequence of his actions (rather than RuSPORT's). Neither Justin Wilson nor JW plc shall be responsible for any fines imposed by any relevant competent legal or regulatory body against RuSPORT that are levied solely and directly as a result of RuSPORT's (rather than Justin Wilson's) actions. If RuSPORT should pay such fine solely attributable to Justin Wilson's actions, JW plc authorizes RuSPORT to withhold from any payments owed to it by RuSPORT an amount equal to such fine. JW plc and/or Justin Wilson shall be solely responsible for selecting and procuring, at their sole cost, any insurance applicable to the rendition of Wilson's services as a professional race car driver, including, without limitation, any death, disability (permanent or temporary, total or partial), contract interruption, Workers compensation, or medical insurance.

5.    **ASSUMPTION OF RISK, WAIVER AND INDEMNITY**

> A.    RuSPORT MAKES NO GUARANTEE, WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO THE QUALITY, FITNESS, SAFETY, EFFICIENCY, ROADABILITY OR RACEABILITY OF ANY OF RuSPORT's RACE CARS.

> For and on behalf of JW plc

> B.    RuSPORT AND JW plc RECOGNIZE AND ACKNOWLEDGE THAT DRIVING A RACE CAR IS AN INHERENTLY DANGEROUS ACTIVITY WHICH EXPOSES A DRIVER AND OTHERS TO A HIGH RISK OF SERIOUS BODILY INJURY OR DEATH, WHICH MAY BE CAUSED BY A DRIVER'S ACTIONS OR OMISSIONS OR THE ACTIONS OR OMISSIONS OF OTHERS. IN RECOGNITION OF THESE FACTS, AND FOR THE CONSIDERATION SET FORTH IN THIS AGREEMENT, JW plc ELECTS VOLUNTARILY TO ENTER INTO THIS AGREEMENT AND AGREES THAT RUSPORT SHALL NOT BE RESPONSIBLE FOR ANY LOSS, DAMAGES, INJURY

**RUSPORT**        <u>RACING SERVICES AGREEMENT</u>        1/29/2007

OR DEATH THAT MAY BE SUSTAINED BY JUSTIN WILSON, AND JW plc AGREES THAT THE SERVICES AND DUTIES IT PROVIDES UNDER THIS AGREEMENT SHALL NOT BE PERFORMED AT RUSPORT'S RISK.

For and on behalf of JW plc

C.    FOR THE CONSIDERATION SET FORTH IN THIS AGREEMENT, JW plc HEREBY RELEASES AND HOLDS HARMLESS (AND PROMISES NOT TO SUE), AND SHALL USE ITS BEST ENDEAVOURS TO PROCURE THAT JUSTIN WILSON SHALL HEREBY RELEASE AND HOLD HARMLESS AND SHALL NOT SUE, RuSPORT, AFFILIATED COMPANIES, SUBSIDIARIES, SPONSORS, SUPPLIERS AGENTS AND EMPLOYEES, TOGETHER WITH THE OWNERS, OFFICERS, DIRECTORS, PARTNERS, AGENTS AND EMPLOYEES OF ANY OF THE FOREGOING FROM ANY AND ALL CLAIMS, DEMANDS, ACTIONS, CAUSES OF ACTION, LOSS OR LIABILITY ARISING OUT OF OR RELATED TO ANY LOSS, DAMAGE, INJURY, INCLUDING DEATH, REGARDLESS OR WHETHER CAUSED BY ANY ACTION OR OMISSION OR IMPROPER CONDUCT OF ANY OF THE ABOVE MENTIONED PERSONS OR ENTITIES, THAT JW plc OR JUSTIN WILSON MAY SUSTAIN PURSUANT TO THIS AGREEMENT.

For and on behalf of JW plc

D.    JW plc SHALL USE ITS BEST ENDEAVOURS TO PROCURE THAT ANY AGREEMENT BY JUSTIN WILSON TO WAIVE, RELEASE AND INDEMNIFY AS PROVIDED IN THIS PARAGRAPH IS ON BEHALF OF JUSTIN WILSON, AND HIS HEIRS, DEVISEES, LEGATEES, BENEFICIARIES, ADMINISTRATORS, PERSONAL REPRESENTATIVES, SUCCESSORS AND ASSIGNS.

For and on behalf of JW plc

E.    IN SUPPLYING THE RACE CAR FOR JUSTIN WILSON TO PARTICIPATE IN THE CHAMPIONSHIP SERIES, NEITHER RuSPORT, PANOZ, FORD, COSWORTH, BRIDGESTONE OR ANY OTHER ENGINE SUPPLIER(S) OR ANY SUPPLIERS OR MANUFACTURERS OF THE RACE CAR(S) OR THEIR COMPONENTS, ENGINES, PARTS OR ACCESSORIES IN ANY SERIES IN WHICH RuSPORT PARTICIPATES, MAKE ANY WARRANTY, EXPRESS OR IMPLIED, AS TO THE QUALITY OR WORKMANSHIP OR MATERIALS. TO THE CONTRARY, RuSPORT AND SUCH SUPPLIERS AND/OR MANUFACTURERS SPECIFICALLY DISCLAIM ANY WARRANTY AS TO THE FITNESS OF THE RACE CAR FOR ANY SUCH PURPOSE. JW plc WAIVES ALL CLAIMS IT HAS OR MAY HAVE IN THE FUTURE, AND SHALL USE ITS BEST ENDEAVOURS TO PROCURE THAT JUSTIN WILSON WAIVES ALL CLAIMS HE HAS OR MAY HAVE IN THE FUTURE, ARISING OUT OF THE BREACH OF ANY SUCH WARRANTY, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE.

For and on behalf of JW plc

F.    JW plc HAS READ, AND CONFIRMS THAT JUSTIN WILSON HAS READ, THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY, AND FULLY UNDERSTANDS, AND CONFIRMS THAT JUSTIN WILSON FULLY UNDERSTANDS, ITS TERMS AND THAT THEY HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING THIS AGREEMENT, AND JW plc HAS SIGNED THIS AGREEMENT FREELY AND VOLUNTARILY WITHOUT INDUCEMENT, ASSURANCE, OR GUARANTEE BEING MADE TO EITHER JW plc OR JUSTIN WILSON AND

**RUSPORT**          <u>RACING SERVICES AGREEMENT</u>          1/29/2007

INTENDS ITS SIGNATURE TO THIS AGREEMENT TO BE A COMPLETE AND UNCONDITIONAL
RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

_____

For and on behalf of JW plc

G.    JW plc WILL OBTAIN, AT RuSPORT's REQUEST, AN ACKNOWLEDGEMENT OF
THE WAIVERS AND INDEMNITIES CONTAINED IN THIS PARAGRAPH 5, OR A SEPARATE
WAIVER FROM ANY SPOUSE OF JUSTIN WILSON.

_____

For and on behalf of JW plc

6.    <u>NOTICES</u>

Any notices required to be given pursuant to the provisions of this Agreement shall be in
writing and shall be given either in person or by certified mail, postage prepaid, to the addresses as
follows:

If to RuSPORT:          Jeremy Dale
                        RuSPORT, Inc.
                        6771 East 45th Street
                        Loveland, CO 80538
                        Phone: (970) 667-5185
                        Fax   : (970) 667-5187

If to JW plc:           Jonathan Palmer
                        Justin Wilson plc
                        The Old Post Office
                        Worthing Road
                        Southwater
                        West Sussex RH13 9EZ

Any such notice shall be deemed to have been served at the time of delivery, provided that if
deemed receipt occurs before 9.00am on a Business Day the notice shall be deemed to have been
received at 9.00am on that day, and if deemed receipt occurs after 6.00pm on a Business Day, or on
any day which is not a Business Day, the notice shall be deemed to have been received at 9.00am on
the next Business Day. "Business Day" means any day which is not a Saturday, a Sunday or a
public holiday in the place at or to which the notice is sent. References to any time shall be to the
local time of the recipient.

7.    <u>CONFIDENTIALITY AND TRADE SECRETS</u>

JW plc and RuSPORT agree that this Racing Services Agreement and the terms hereof shall
remain confidential and shall not be disclosed to any other party, and JW plc shall use its best
endeavors to procure that Justin Wilson shall not disclose those terms to any other party, without the
prior written consent of both Parties. Any trade secret or similar proprietary information of any kind
developed by RuSPORT and divulged to JW plc or Justin Wilson during the Term will remain the sole
property of RuSPORT. JW plc will not communicate or disclose to anyone other than RuSPORT or
anyone designated by RuSPORT, and shall use its best endeavors to procure that Justin Wilson shall
not so communicate or disclose, or use for it's own account, and shall use its best endeavors to
procure that Justin Wilson shall not use for his own account, without the written consent of RuSPORT,

**RUSPORT**    <u>RACING SERVICES AGREEMENT</u>    1/29/2007

any of RuSPORT's testing, racing, manufacturing, design, technical car setup, engineering information, nor any trade secrets or non public technical information, data, ideas, inventions, patent, patent applications or copyright materials which may originate, be produced or developed by RuSPORT during or before the Term of this Racing Services Agreement and which either JW plc or Justin Wilson learns as a result of JW plc's association with RuSPORT. Upon termination of this Agreement, JW plc will deliver, and shall use its best endeavors to procure that Justin Wilson delivers, to RuSPORT or destroys (at RuSPORT's option) all writings, computer hardware and software and any other materials related to or containing any of the materials or types of property described in this paragraph. Further, JW plc agrees hereunder to execute, and shall use its best endeavors to procure that Justin Wilson executes, a separate RuSPORT Confidentiality Agreement which will be incorporated by reference to this Agreement.

8.    **SPONSORSHIP AND ENDORSEMENT**

JW plc is the sole and exclusive agent and manager of Justin Wilson and (as between the Parties) owns all rights (including without limitation intellectual property rights) in and to Justin Wilson's name, signature, voice, likeness, appearance, nickname(s), trademarks, logo(s), devices, biographical material, reputation, goodwill and other endorsement features (together the "**JW Endorsement**").

A.    <u>Grant of License</u>

JW plc hereby grants RuSPORT a non-exclusive license to use, only and for the duration of this Agreement, the JW Endorsement (however produced or re-produced) for advertising, merchandising, publicity, promotion and other commercial purposes. Furthermore, JW plc authorizes RuSPORT and its sponsors (including, without limitation, any sponsors that may be added during the Term) and any persons or entities contracting with RuSPORT and its sponsors to use and publish, only and for the duration of this Agreement, the JW Endorsement (however produced or reproduced) for advertising, merchandising, publicity, promotion and other commercial purposes ("**Advertising Materials**"). JW plc shall use its best endeavors to procure that Justin Wilson will participate in the making of print and/or film/video commercials, and any photography, recording or film sessions reasonably requested by RuSPORT ("**Sessions**") for the creation of Advertising Materials for use only by RuSPORT or RuSPORT's sponsors during the Term of this Agreement, provided that the number of Sessions shall not exceed ten (10) in any Champ Car Season. If RuSPORT or its sponsors require Justin Wilson to participate in any Sessions in excess of the ten (10) Sessions provided for above, Justin Wilson shall only be required to participate in such Sessions on payment of a sum of five thousand dollars ($5,000 US) plus expenses per Session by RuSPORT or the sponsor (as applicable) to JW plc. All Advertising Materials shall be available for use by RuSPORT and its sponsors exclusively. Notwithstanding the foregoing, nothing under this Agreement shall require Justin Wilson to personally endorse tobacco or alcoholic products or be associated with any manufacturers of tobacco or alcoholic products, without the prior written approval of JW plc.

B.    <u>Personal Appearances at Race Events</u>

JW plc shall use its best endeavors to procure that Justin Wilson will participate without additional fees in personal appearances and promotional events as requested by RuSPORT at race events, including special promotions, cocktail parties, customer dinners and other similar activities, and will allow photographing, signing autographs, giving interviews, and socializing with people at such functions provided that such activities do not unreasonably interfere with Justin Wilson's preparation for or participation in the race event(s). JW plc shall use its best endeavors to procure that Justin Wilson shall wear RuSPORT clothing (or sponsor's clothing if RuSPORT requests) during

**RUSPORT**  **RACING SERVICES AGREEMENT**  1/29/2007

all interviews, if possible, and to mention RuSPORT and any sponsors in a manner consistent with the culture of RuSPORT as set forth herein above.

### C. **Personal Appearances**

JW plc shall use its best endeavors to procure that Justin Wilson during the Term of this Agreement, participates on dates and times and at places reasonably requested by RuSPORT, in personal appearances at promotional events separate from Race events, to include, without limitation, public relations events and related activities for RuSPORT and/or sponsors, upon prior notice in accordance with clause 8(D) ("**Functions**"). JW plc shall use its best endeavors to procure that Justin Wilson will allow photographing, signing autographs, giving interviews and socializing with people at such Functions as requested by RuSPORT or its sponsors provided that the number of days devoted to Functions shall not exceed twenty two (22) and the number of days devoted to travel to attend said Functions shall not exceed twenty two (22) in any calendar year of the term. If RuSPORT or Team sponsors require Justin Wilson to participate in any Functions in excess of the number of days provided for above, Justin Wilson shall only be required to participate in such Functions on payment of a sum of two thousand five hundred dollars ($2,500 US) plus expenses per day by RuSPORT or the sponsor (as applicable) to JW plc. At all such functions, JW plc shall use its best endeavors to procure that Justin Wilson shall wear, if reasonably practicable, RuSPORT clothing or the clothing of the sponsor(s) as reasonably requested by RuSPORT.

### D. **Scheduling**

RuSPORT shall ensure (and shall use all reasonable endeavors to ensure all sponsors ensure) that Justin Wilson is provided with as much advance notice as reasonably practicable of any Sessions, Functions or other required appearances, and in any event no less than seven (7) days' notice. In the event that Justin Wilson is unable to attend due to prior commitments then the Parties shall act in good faith to reschedule the relevant Session, Function or appearance.

In scheduling Justin Wilson's duties under this Agreement (including his driving duties, Sessions, Functions and other appearances) RuSPORT shall not compromise Justin Wilson's ability to perform his racing duties in any way and shall (for example only) not schedule any Session or Function requiring long-distance travel immediately prior to any Race.

## 9. **MERCHANDISING**

JW plc shall be entitled to receive one third (1/3) of the net profits received by RuSPORT with regard to any merchandise, collectibles, products or souvenirs sold by RuSPORT utilizing the JW Endorsement, including his name, image, likeness, autograph, picture, biography or racing history. RuSPORT retains any and all rights pertaining to team color schemes, car numbers, style and other like materials. JW plc shall not use or grant, and shall use its best endeavors to procure that Justin Wilson shall not use or grant, any third party such usage without express written permission of RuSPORT, provided that nothing in this Agreement shall limit or restrict JW plc or Justin Wilson in undertaking promotion of Justin Wilson and/or JW plc, subject to clause 10. JW plc shall be entitled to use the RuSPORT and sponsor marks, logo and images (including without limitation images of the race car and the race car and team get-up) for its internal purposes including without limitation in communications with JW plc shareholders using the Justin Wilson and JW plc websites.

**RUSPORT**    <u>RACING SERVICES AGREEMENT</u>    1/29/2007

## 10.    <u>PERSONAL SPONSORS</u>

### A.    **No Conflicting Personal Sponsors**

The Parties acknowledge JW plc's status as Justin Wilson's sole and exclusive agent and manager and agree that JW plc shall be entitled to promote Justin Wilson for the benefit of Justin Wilson, JW plc and the shareholders of JW plc. Accordingly, JW plc shall be entitled to negotiate and enter into arrangements and agreements for the promotion of Justin Wilson including personal sponsorship arrangements and publicity and other commercial arrangements, provided in each case that: (i) such arrangements do not conflict with the racing duties, Sessions, Functions and other appearances scheduled by RuSPORT or any Team sponsor in accordance with clause 8(D); and (ii) any personal sponsorship arrangements do not directly conflict on any basis with the product or service promoted in association with RuSPORT by any extant RuSPORT sponsor notified to JW plc by RuSPORT prior to the start of each Season, in each case without the prior consent of RuSPORT, which shall not be unreasonably withheld.

### B.    **Helmet**

JW plc shall provide Justin Wilson's helmet and retains the right to use all areas of the helmet for Justin Wilson's own helmet design.

### C.    **Driver's Suit**

RuSPORT retains the right to advertise or permit sponsor advertising on the driver's apparel. Subject to clause 10(A), JW plc shall be granted two (2) positions on the driver's suit of Justin Wilson, each position being twelve square inches (12 sq/in). Said positions are to be determined by RuSPORT based on current and future commercial agreements between RuSPORT and its commercial sponsors and partners. All designs related to said space must be approved by RuSPORT in writing.

## 11.    <u>NATURE OF AGREEMENT</u>

JW plc shall not and shall use its best endeavors to procure that Justin Wilson shall not, for the duration of this Agreement, participate in any other racing activities or programs, including exhibitions or commercial activities relating to motor racing without first obtaining the prior written consent of RuSPORT, which shall not be un-reasonably withheld. JW plc acknowledges and agrees that obtaining such permission from RuSPORT is unlikely if said racing activities or programs interfere in any way with RuSPORT racing and/or commercial activities. Subject to the provisions of this Agreement, JW plc shall have the right, pursuant to the Management Agreement, to progress and complete any negotiations relating to the participation of Justin Wilson in motorsport activities.

## 12.    <u>VALIDITY and SEVERABILITY</u>

The validity, interpretation and enforcement of this Agreement shall be governed by the laws of the State of California. The invalidation of any clause or provision of this Agreement shall have no effect on the remaining provisions of this Agreement, and as such, the remaining Agreement shall remain in full force and effect.

**RUSPORT**          <u>RACING SERVICES AGREEMENT</u>          1/29/2007

13.    <u>TERMINATION</u>

A.    Either party ("**terminating party**") may terminate this Agreement prior to expiry of the Term by providing the other ("**defaulting party**") with no less than thirty (30) days prior written notice in the following circumstances:

(i)    if the defaulting party commits a breach of its material obligations under this Agreement, which such breach, if capable of remedy, is not remedied by the defaulting party within thirty (30) days written notification of such breach by the terminating party; or

(ii)    the defaulting party becomes insolvent.

C.    In the event of termination by JW plc, all Fixed Fees due up to and including the date of termination to be paid to JW plc pursuant to clause 6(A) to (C) in respect of the relevant Season and for the avoidance of doubt the Performance Incentive Fees earned by Justin Wilson pursuant to clause 6(D) prior to the date of termination shall become immediately due and payable by RuSPORT to JW plc.

D.    The parties shall have no further obligations or rights under this Agreement after the end of the Term, without prejudice to any obligations or rights which have accrued to any party at the time when the Term ends save that all clauses the survival of which is necessary for the interpretation or enforcement of this Agreement shall survive termination.

14.    <u>CONTROLLING LAW and ARBITRATION</u>

This Agreement shall be construed and enforced in accordance with the laws of the State of California and the Parties agree to submit only to the jurisdiction of the courts of California with respect to enforcement of any right to injunctive relief given to RuSPORT by this Agreement and consent to mediation or arbitration in the State of California to settle any other dispute which may arise from this Agreement. Except with respect to actions for injunctive relief (including, without limitation, temporary restraining orders and preliminary or ex parte injunctions) and actions to enforce arbitration awards, if there is a dispute of whatever kind or nature between the Parties, which the Parties are not able to resolve after their mutual good faith and best efforts to do so, the matter shall be submitted to mediation in California under the rules of the American Arbitration Association ("AAA"). The AAA shall choose the mediator who must be knowledgeable in motor sports racing and related economics. In the event the dispute is not resolved through mediation, then the Parties shall agree upon an arbitrator per the AAA procedures and, if that fails, the AAA shall select the AAA arbitrator. The matter shall then be submitted to the arbitrator for final, binding and unappealable arbitration, whose decision as to resolution of the dispute shall be conclusive upon the Parties and may be enforced in a court of competent jurisdiction. Each Party shall be responsible for its own attorney's fees and one-half (1/2) the cost of any such mediation/arbitration procedure(s). The procedures set forth in this paragraph shall be the sole dispute resolution process available to the Parties hereunder.

15.    <u>ASSIGNMENT OF CONTRACT</u>

This Agreement is not assignable by JW plc and JW plc may not delegate the duties required of them pursuant to this Agreement without the express written consent of the RuSPORT. RuSPORT hereby grants to JW plc the right to assign the economic benefits of this Agreement to a company or entity to be nominated and controlled by JW plc.

**RUSPORT**          <u>RACING SERVICES AGREEMENT</u>          1/29/2007

### 16.  <u>GOVERNING RESTRICTIONS AND PROTESTS</u>

In connection with the testing, practices and races contemplated in this Agreement, RuSPORT may be required to submit to certain rules, regulations, restrictions and waivers on behalf of itself and its drivers and team members, contained in the documentation, licenses, entry blanks, etc. for said activities. JW plc shall abide, and shall use its best endeavors to procure that Justin Wilson abides, by such rules, regulations, restrictions and waivers and shall take no action, and shall use its best endeavors to procure that Justin Wilson takes no action, inconsistent therewith which would expose RuSPORT to liability. RuSPORT reserves the sole right to determine, on behalf of itself and JW plc, whether any official action or decision, race outcome, placing or pay out shall be protested or contested in any manner.

### 17.  <u>ENTIRE AGREEMENT</u>

This Agreement sets forth the entire and exclusive understanding of the Parties hereto with respect to the matters covered hereby and any and all prior Agreements, including an agreement dated June 30th, 2006 between RuSPORT and JW plc, understandings and/or discussions relating thereto, whether written or oral, are hereby superseded by this Agreement. This Agreement may be modified only by written Agreement signed by both Parties.

### 18.  <u>AUTHORITY</u>

The Parties hereto represent and warrant that the signatories have the necessary authority for the execution and effectiveness of this Agreement and that this Agreement is a legally binding obligation of the Parties. RuSPORT encourages JW plc to seek independent legal counsel to assist with the entering in to this important binding legal document. JW plc, by entering into this Agreement, signifies that it has been so advised and has either sought competent independent legal counsel prior to entering into this Agreement or has chosen to freely and voluntarily waive that right.

### 19.  <u>FACSIMILE</u>

Facsimile signatures shall be acceptable and this Agreement shall become a legally binding obligation of the Parties upon execution by facsimile.

**RUSPORT**            <u>RACING SERVICES AGREEMENT</u>            1/29/2007

**ACCEPTED AND AGREED:**

**RuSPORT, Inc., a California Corporation**        **JUSTIN WILSON PLC, a United Kingdom PLC**

By: _____        By: _____

Dan Pettit, Owner        Jonathan Palmer, Managing Director

Date: _____        Date: _____

<u>Read and Agreed by Justin Wilson</u>

_____

Justin Wilson

**WITNESSES**

_____

_____

**ROSPORT**          RACING SERVICES AGREEMENT          12/24/2008

ACCEPTED AND AGREED:

RoSPORT, Inc., a California Corporation          JUSTIN WILSON PLC, a United Kingdom PLC

By: _____          By: _____

Dan Petit, Owner          Jonathan Palmer, Managing Director

Date: _____          Date: 24 DECEMBER 2006

                                        Read and Agreed by Justin Wilson

                                        _____

                                        Justin Wilson

WITNESSES

_____

_____

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

**I.(a) PLAINTIFFS**

RuSPORT, INC., a California corporation

**DEFENDANTS**

JUSTIN WILSON PLC, a company registered in England; and
JUSTIN WILSON, an individual

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Howard A. Slavitt, Coblentz, Patch, Duffy & Bass LLP   (415) 391-4800
One Ferry Building, Suite 200, San Francisco, CA  94111

ATTORNEYS (IF KNOWN)

*E-filing*

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)
(For diversity cases only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transfered from Another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Satellite TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 791 Empl.Ret. Inc. Security Act | ☐ 870 Taxes (US Plaintiff or Defendant | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/ disab - Empl | ☐ 555 Prison Condition | | | |
| | ☐ 446 Amer w/ disab - Other | | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. Section 1332; (Complaint for Preliminary and Permanent Injunctive Relief for Breach of Personal Services Agreement)

## VII. REQUESTED IN COMPLAINT:

Preliminary and Permanent Injunctive Relief

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".    NONE

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND       ☐ SAN JOSE

DATE January 31, 2008      SIGNATURE OF ATTORNEY OF RECORD

*Howard A. Slavitt*

LexisNexis® Automated California Federal District Court Form

# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA

*E-filing*

RuSPORT, INC., a California Corporation

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**MMC**

**v.**

JUSTIN WILSON PLC, a company
registered in England; and JUSTIN
WILSON, an indvidual

**CV 08        0734**

TO: (Name and address of defendant)
JUSTIN WILSON PLC and JUSTIN WILSON
The Old Post Office, Worthing Road, Southwater
West Sussex, England RH13 9EZ

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Howard A. Slavitt
Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200
San Francisco, CA  94111
415-391-4800

an answer to the complaint which is herewith served upon you, within   20   days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in
the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking

CLERK

JAN 3 1 2008

DATE_____

Helen L. Almacen

(BY) DEPUTY CLERK

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |
| Name of SERVER | TITLE |

*Check one box below to indicate appropriate method of service*

☐    Served Personally upon the Defendant. Place where served:

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐    Returned unexecuted:

☐    Other *(specify)*:

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                          *Date*                                        *Signature of Server*

                                                          _____
                                                          *Address of Server*

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure